## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **Oscar Robinson** | : | CIVIL ACTION - LAW |
| *Plaintiff,* | : | |
| v. | : | |
| | : | No. |
| **City of Philadelphia, Police Officer Eric** | : | |
| **Clark, Police Officer Redmond, Lieutenant** | | |
| **Trevor Peszko, John Doe Police Officers** | : | JURY TRIAL DEMANDED |
| **1-12, and John Doe Police Chief** | : | |
| *Defendants.* | : | |

## COMPLAINT

**AND NOW**, comes Plaintiff, Oscar Robinson, by and through his undersigned counsel, Falkenbach Law, LLC, and files this Complaint, averring as follows:

## INTRODUCTION

1.     Plaintiff brings this action under 42 U.S.C. § 1983 seeking redress for extraordinary misconduct of the above-captioned Philadelphia Police Officers who used improper and unconstitutional means to subject Plaintiff to unlawful arrest and imprisonment, unlawful search, excessive use of force, retaliation, as well as violating the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq*, including the Rehabilitation Act ("RA"), 29 U.S.C. §701 *et seq.*, as well as state law claims identified hereinbelow.

2.     The actions and conduct of the defendant officers were the result of policies, practices, customs and deliberate indifference on the part of Defendant City of Philadelphia, including failing to take disciplinary actions against excessive use of force, insufficient policies for the Philadelphia Police Department pertaining to use of force, and racism within the Philadelphia Police Department.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's rights protected by 4th and 14th Amendments to the United States Constitution and pursuant to the ADA, including the RA.

4.      Plaintiff's claims for compensatory and punitive damages are authorized by 18 U.S.C. § 1964 and 42 U.S.C. § 1983.

5.      This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 23 U.S.C. § 1367(a).

6.      Venue is proper in this district under 28 U.S.C. § 1391(b) as the events giving rise to Plaintiff's claims occurred in this judicial district, and Defendants are located within this district.

## PARTIES

7.      Plaintiff, Oscar Robinson, is an adult individual who is a resident of Philadelphia, Pennsylvania and at all times relevant to this action was in the Eastern District of Pennsylvania.

8.      Defendant, City of Philadelphia, is a municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the Philadelphia Police Department ("PPD") which employees Defendants Commissioner Danielle Outlaw, Police Officer Eric Clark, Police Officer Redmon, and John Doe Police Officers.

9.      Upon information and belief, Defendant, Police Officer Eric Clark ("PO Clark" or "Defendant Clark") is an adult individual who, at all times relevant hereto was serving in his capacity as a sworn officers of the PPD and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the City of Philadelphia. PO Clark was entrusted to protect the Constitutional rights of those he encountered and at all times relevant hereto, was

2

acting under color of law, and acted in concert with one or more of the individual Defendants in the performance and conduct of his or their actions or acted independently.

10.     Upon information and belief, Defendant, Police Officer Redmon ("PO Redmon" or "Defendant Redmon") is an adult individual who, at all times relevant hereto was serving in his capacity as a sworn officers of the PPD and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the City of Philadelphia. PO Redmon was entrusted to protect the Constitutional rights of those he encountered and at all times relevant hereto, was acting under color of law, and acted in concert with one or more of the individual Defendants in the performance and conduct of his or their actions or acted independently.

11.     Upon information and belief, John Does 1-12 ("John Doe Police Officers") are all individuals and were employed as police officers by and for the City of Philadelphia whose identifies are not yet known, but through discovery will become known, and who were involved in the conduct herein described against Plaintiff.  PO Clark, PO Redmon and John Doe Police Officers are hereinafter jointly referred to as "Defendant Officers."

12.     Upon information and belief, Lieutenant Trevor Peszko ("Lieutenant Peszko") is an adult individual who, at all times relevant hereto was serving in his capacity as a sworn officers of the PPD and was entrusted with the power to enforce the laws of the Commonwealth of Pennsylvania and the City of Philadelphia. Lieutenant Peszko was entrusted to protect the Constitutional rights of those he encountered and at all times relevant hereto, was acting under color of law, and acted in concert with one or more of the individual Defendants in the performance and conduct of his or their actions or acted independently. Upon information and belief, Lieutenant Peszko was responsible for the formation and/or implementation of practices,

3

policies, procedures, discipline and assignment of officers, hiring and firing, as well as day to day operation and overseeing command and control of PPD, including Defendant Officers.

13.     Upon information and belief, John Doe Police Chief ("John Doe Police Chief") is an individual and was employed as a police chief by and for the City of Philadelphia whose identify is not yet known, but through discovery will become known, and was were involved in the conduct herein described against Plaintiff.  Upon information and belief, John Doe Police Cheif was responsible for the formation and/or implementation of practices, policies, procedures, discipline and assignment of officers, hiring and firing, as well as day to day operation and overseeing command and control of PPD, including Defendant Officers.

14.     At all relevant times, all defendants were acting in concert and conspiracy and their actions deprived the Plaintiff of his Constitutional and statutory rights.

15.     At all times relevant to this Complaint, all defendants acted under color of law.

16.     The Defendant Officers are being sued in their individual capacities.

## FACTS

17.     On May 22, 2020, at approximately 5:30 p.m., Plaintiff arrived at 2929 North Philip Street in Philadelphia, PA 19133 for a block memorial service being held for his best friend, Hector, who had passed away several days before.

18.     Present at the memorial service was Plaintiff's friends and family, including his four (4) month old son and the five (5) year old child of Plaintiff's girlfriend.

19.     Plaintiff's friends and family gathered on May 22, 2020 for a candle light vigil to honor their tragically murdered friend.

20.     Some of the individuals, including Plaintiff, were wearing specially designed t-shirts to honor the deceased.

4

21.     Specifically, these t-shirts depicted Plaintiff's deceased friend with a halo above his head, clearly indicating that the individuals on the street were gathered for a memorial service.

22.     Less than twenty minutes after Plaintiff's arrival to the memorial service, Police Officers from the Philadelphia Police Department (hereinafter "PPD") arrived, including the John Doe Police Officers, PO Clark, and PO Redmon.

23.     It is unknown why the PPD were at the area during the memorial service.

24.     When PPD arrived on the scene, a car on the block was playing music which belonged to one of Plaintiff's friends.

25.     After the arrival of the PPD police officers, Plaintiff went to turn off the music from the car to allow the officers to be heard.

26.     As soon as Plaintiff entered the car to turn off the music, PO Clark placed a gun into the back of Plaintiff and grabbed his arm.

27.     No verbal commands, warnings, or other lesser methods of force were attempted prior to a gun being shoved into the back of Plaintiff.

28.     Rather, the situation was immediately escalated to use of a deadly firearm without any justification.

29.     PO Clark proceeded to take Plaintiff to the police car with the gun drawn on his back the entire time.

30.     Plaintiff was not resisting arrest and his hand were behind his back this while being escorted to the police car by PO Clark.

31.     At the police vehicle, PO Clark patted Plaintiff down, handcuffed him, took his cellphone, and placed him into the police car.

32.     John Doe Police Officers then proceeded to search homes of individuals on the block that attended the memorial service without consent, a warrant, or probable cause.

33.     PO Redmon and two John Doe Police Officers then proceeded to search the car in which Plaintiff had turned down the music – again without consent, a warrant, or probable cause – finding nothing of interest.

34.     Plaintiff was left in the police car for over an hour without air conditioning or the windows down even after the determination was made that there were no weapons in the vehicle and no probable cause for his arrest.

35.     The temperature on this day was a high of 72 and a low at night of 61.

36.     Plaintiff was eventually released, as there was nothing – even with illegal searching – which could justify his arrest.

37.     Plaintiff obtained contusions around his wrists associated with the handcuffing of this false arrest.

38.     On or about June 9, 2020, a John Doe Police Officer arrived at the home of Plaintiff.

39.     The John Doe Police Officer placed a pink slip onto Plaintiff's doorstep, called him a "mother fucker," and left.

40.     Upon review of the pink slip, it indicated to contact Lieutenant Trevor Peszko of the PPD.

41.     Plaintiff, through his then retained counsel, contacted Lieutenant Peszko from the PPD.

42.     A PPD internal affairs interview with Lieutenant Peszko was set up and subsequently held with Plaintiff on June 30, 2020 regarding the May 21, 2020 incident.

6

43.     During this interview, Plaintiff identified the misconduct of PO Clark, his partner, PO Redmon, and the John Doe Police Officers, and showed the video evidence obtained of the May 21, 2020 incident.

44.     Plaintiff provided a formal statement complaining of the conduct of these police officers.

45.     After completing the formal statement complaint of the conduct of the PO Clark, PO Redmon, and the John Doe Police Officers, Plaintiff began witnessing cop cars from their associated district drive past his home, which was located in a different police district.

46.     After the May 21, 2020 incident, Plaintiff began to have significant mental health issues.

47.     On or about July 10, 2020, Plaintiff went to see a psychiatrist for his mental health issues.

48.     At this time, the psychiatrist diagnosed Plaintiff with post-traumatic stress disorder ("PTSD") associated with the May 21, 2020 incident, including, *inter alia*, intrusive memories of the incident, unpleasant dreams, poor sleep, avoidance of the location of the incident, startle response, feeling he will not live long, paranoia of being followed, fear of the police, and low mood.

49.     On July 28, 2020, PO Clark and his partner, PO Redmon, appeared in a police cruiser out front of Plaintiff's house while Plaintiff and his brother are on the porch.

50.     Defendants PO Clark and PO Redmon asked if anyone called the cops.

51.     Plaintiff responded that no one had called the cops.

52.     Despite asking if anyone had called the cops, PO Clark and PO Redmon proceeded to come onto the porch and state that they have a warrant for Plaintiff's arrest.

53.     PO Clark and PO Redmon began tugging and grabbing Plaintiff.

54.     Plaintiff realizing these are the same police officers from the May 21, 2020 incident – together with the inconsistent prior questioning of whether someone called the cops and his PTSD - requested to see a copy of the warrant on multiple occasions.

55.     Plaintiff specifically indicated that he would go with them if they showed him the warrant.

56.     PO Clark and PO Redmon knew or should have reasonably known that the May 21, 2020 incident where PO Clark placed a gun in Plaintiff's back without cause would have created psychological issues.

57.     PO Clark and PO Redmon refused to show a copy of the warrant to Plaintiff despite this and knowledge and personal involvement in the May 21, 2020 incident.

58.     Plaintiff reasonably believed based upon the above that PO Clark and PO Redmon were retaliating against him for his prior complaint of excessive force against them and that they did not have an actual warrant.

59.     Instead of providing proof of the warrant, PO Clark and PO Redmon requested additional police officers to the scene.

60.     Six (6) more John Doe Police Officers arrived on the scene and ran up to the porch steps, as well as John Doe Police Chief.

61.     One John Doe Police Officer ripped Plaintiff out of his seat, put him in a chokehold, and threw him against the door of his house.

62.     Plaintiff was then slammed upon against the porch railing and four (4) John Doe Police Officers pinned him down against the railing – restricting his breathing and causing bruising to his ribs.

63.     Plaintiff's brother, who was filming the incident with his phone from a distance, had his hand grabbed by one John Doe Police Officer and another John Doe Police Officer is seen hitting the phone out of his hand.

64.     Plaintiff is then handcuffed, and four (4) John Doe Police Officers proceed to take Plaintiff down the cement steps of his home.

65.     One John Doe Police Officer pulled Plaintiff's pant belt loop from the front, causing him to fall down the cement steps while handcuffed.

66.     This same John Doe Police Officers proceeded to drag Plaintiff down the remainder of the concrete steps.

67.     Notably, these John Doe Police Officers that were also present during the May 21, 2020 incident – several of which conducted the improper warrantless searches complained of by Plaintiff and depicted in the video shown by Plaintiff to Lieutenant Peszko of the PPD on June 30, 2020.

68.     John Doe Police Chief observed and acquiesced to the behavior displayed by the John Doe Police Officers and never attempted to intervene in the excessive use of force utilized.

69.     The May 21, 2020 incident took place in the 24-25th Philadelphia Police District with police officers associated with this district, including the John Doe Police Officers, Defendant Clark, and Defendant Redmon.

70.     Despite the July 28, 2020 incident taking place at the 15th Philadelphia Police District, the same officers from the 24-25th Philadelphia Police Department initiated and were present.

71.     Plaintiff was then placed into a PPD vehicle.

72.     While in the police vehicle, Plaintiff requested medical attention for his injuries.

73.     Plaintiff was taken the emergency room at Temple University Hospital.

74.     During this time, Plaintiff was put into a hospital gown while present with John Doe Police Officers.

75.     The John Doe Police Officers videotaped Plaintiff in his hospital gown and told him that they would be viewing the footage later and laughing at him.

76.     While at Temple University Hospital, Plaintiff received multiple x-rays of the left ankle, left knee, cervical spine, and lumbar spine.

77.     These hospital records also denote abrasions to the back associated with the July 28, 2020 incident.

78.     Plaintiff was never convicted of any crime associated with either the May 21, 2020 or July 28, 2020 incidents.

79.     Plaintiff further had no prior criminal record before the May 21, 2020 incident.

80.     The American Civil Liberties Union of Pennsylvania ("ACLU") conducted an extensive investigation regarding the Philadelphia Police Department in response to Black Lives Matter protests in May and June 2020 – the same time as the incidents in question.[1]

81.     The determination of the investigation from the ACLU revealed that the PPD's Policies on the Use of Force do not comply with human rights standards.

82.     The ACLU article also discusses the failure of PPD officers to contemplate prior to using force the balance of the harm that will be caused by the use of force with the legitimate interest that is being protected, noting that multiple protestors were pepper sprayed while

---

[1] *See* ACLU of Pennsylvania and Drexel University, *Letter of Allegation regarding the Excessive Use of Force and Discrimination by the Philadelphia Police Department in response to Black Lives Matter Protests in May and June 2020,* https://aclupa.org/sites/default/files/field_documents/2020.11.23.un_submission_on_police_violence_in_philadelphia_final.pdf

handcuffed in PPD custody and without providing any verbal warnings or attempts to de-escalate.

83.    The ACLU investigation further concluded that the City of Philadelphia's accountability procedures for the PPD are woefully inadequate and out of line with human rights standards, specifically that the City of Philadelphia provides little to no oversight of and accountability for police violence.

84.    The ACLU also discussed the long history of overt racism amongst PPD officers against African Americans, such as Plaintiff. This includes information that as recent as 2019 racist and/or violent Facebook posts were published by over 300 active duty PPD officers, including command staff.

85.    The investigation of the ACLU further determined that civilian complaints against police are investigated and adjudicated by the PPD itself and only about 19% of the civilian complaints are sustained by Internal Affairs after an investigation. However, even when a complaint is sustained, it does not mean that an officer will receive any disciplinary action greater than a reprimand and a note in a personal file rather than being sent to the Police Board of Inquiry for a hearing.

86.    In the past five (5) years, the 24th/25th District PPD had over 460 civilian complaints filed against them.[2]

87.    These complaints include multiple allegations of racial profiling, over 85 allegations of physical abuse, false arrests, harassment, failure to follow proper police procedures, and improper property and physical searches conducted by the 24th/25th District PPD officers.

---

[2] Information obtained through opendataphilly.org.

88.     PO Clark, PO Redmon, and John Doe Police Officers (collectively hereinafter referred to as "Defendant Officers") disregarded proper police practices and these actions led the improper conduct in this case.

89.     The excessive use of force, unlawful arrest, search, detention, harassment, retaliation, and disregard of reasonable requests for accommodations of known or reasonably foreseeable disabilities in this case were the direct result of the defendants' pattern, practice and custom of racial profiling and extreme use of force without utilizing the proper use of force continuum, proper warnings, or attempts to utilize less lethal means of force.

90.     Defendant Officers acted willfully, deliberately, maliciously or with reckless disregard of the Plaintiff's constitutional and statutory rights.

91.     As a direct and proximate result of all defendants, Plaintiff suffered and continues to suffer physical and psychological harms, pain and suffering, some or all of which may be permanent, as well as financial losses, including loss wages.

92.     Defendants engaged in the aforesaid conduct for the purpose of violating the Plaintiff's constitutional rights by subjecting him to the unreasonable use of force, unlawful arrest, search, detention, harassment, retaliation, and discrimination.

93.     Defendant City of Philadelphia has failed to properly train, supervise, and discipline the Defendant Officers and other officers in the PPD in cases involving violations of rights of civilians, including cases of racial profiling, excessive use of force, improper searches, seizures, arrests, harassment, and retaliation for complaints, thereby causing the violations of this case.

94.    The above-described actions of all the defendants caused the violations of Plaintiff's rights under the First Amendment, Fourth Amendment, Fourteenth Amendment, ADA and RA.

## CAUSES OF ACTION

**COUNT I**
**Violation of 42 U.S.C. § 1983**
**Excessive Use of Force**
**Plaintiff v. Defendant Officers**

95.    Plaintiff incorporates by reference each allegation stated in the preceding paragraphs.

96.    Plaintiff was subject to a seizure within the meaning of the Fourth Amendment through application force.

97.    The applicable of force against the Plaintiff was unreasonable under the circumstances and unconstitutionally excessive.

98.    The Fourth Amendment to the United State Constitution protects persons from being subjected to excessive force while being arrested even if the arrest is otherwise proper.

99.    Defendant Officers used excessive force against Plaintiff in that there was no need for the application of any force and the fact that the amount of force used by the Defendant Officers exceeded the amount of force which a reasonable officer would have used under similar circumstances and Defendant Officers knew that their conduct violated a clearly established law.

100.    Lethal force or use of a deadly weapon of any kind was not required nor should it have been employed.

101.    The use of choke holds and other improper and dangerous physical combat should not have been employed.

102.    Plaintiff did not present a threat to the Defendant Officers or any other person or property during the relevant times identified herein.

103.    The use of force was not reasonable by the Defendant Officers under the Constitution where, as here, there was no need for any force especially the use of a deadly weapon.

104.    The nature and degree of excessive force utilized against the Defendant Officers was outrageous, reprehensible, malicious, vicious, intentional and malevolent and clearly warrants an award of punitive and compensatory damages.

105.    As a result of the excessive force against Plaintiff in violation of his Fourth Amendment rights, the Plaintiff suffered damages as stated herein.

**WHEREFORE**, Plaintiff, Oscar Robinson, respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred and Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with attorneys' fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages, and any other damages as deemed appropriate by the Court.

**COUNT II**
**Violation of 42 U.S.C. § 1983**
**Fourth Amendment – Unlawful Seizure/Substantive Due Process**
**Plaintiff v. Defendant Officers**

106.    Plaintiff incorporates by reference each allegation stated in the preceding paragraphs.

107.    At all relevant times, Plaintiff possessed a liberty interest in his bodily integrity and was entitled to equal protection under the law, rights which were and are protected by the Fourth and Fourteenth Amendments to the United State Constitution.

14

108.    In committing the acts complained of herein, Defendant Officers, while acting under color of state law, neglected their duties to the public in general and Plaintiff specifically, acted in concert and/or coordination to conspire to deprive Plaintiffs of their constitutional rights, discriminated against Plaintiff because he is African American, unlawfully and unreasonably seized Plaintiff without cause, depriving Plaintiff of those rights and privileges afforded by the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

109.    Specifically, Defendant Officers effectuated Plaintiff's arrest without warrant or probable cause.

110.    At all relevant times Defendant Officers acted with malice, willful disregard and/or reckless indifference to Plaintiff and under color of state law.

111.    The actions of the Defendant Officers under color of state law, as more fully described hereinabove, deprived Plaintiff of his liberty and bodily integrity and equal protection of the law in violation of 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States.

**WHEREFORE**, Plaintiff, Oscar Robinson, respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred and Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with attorneys' fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages, and any other damages as deemed appropriate by the Court.

**COUNT III**
**Violation of 42 U.S.C. § 1983**
**First Amendment Retaliation**
**Plaintiff v. Defendant Officers**

112.     Plaintiff incorporates by reference each allegation stated in the preceding paragraphs.

113.     At all relevant times, Plaintiff possess a liberty interest in his freedom of speech and was entitled to equal protection under the law, rights which were and are protected by the First and Fourteenth Amendment to the United State Constitution.

114.     Plaintiff exercised his First Amendment rights by filing a complaint against the Defendant Officers and indicating his intent to sue for the May 21, 2020 incident.

115.     As a result of this complaint and intent to sue, Defendant Officers continually harassed Plaintiff by driving past his house to intimidate him, engaged additional excessive use of force against him, ridiculed and videotaped him while he was hospitalized for the excessive use of force utilized against him, and denied him reasonable requests for accommodations to see an alleged warrant.

116.     These actions were taken by the Defendant Officers to deter Plaintiff from exercising his First Amendment rights.

117.     In committing the acts complained of herein, Defendant Officers, while acting under color of state law, neglected their duties to the general public and Plaintiff specifically, acted in concert and/or coordination to conspire to deprive Plaintiff of his constitutional rights, discriminated against Plaintiff because he is African American, unlawfully and unreasonably seized, harassed, and ridiculed Plaintiff for exercised his right to free speech, depriving Plaintiff of those rights and privileges provided by the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

16

118.     The actions of the Defendant Officers under the color of state law, as more fully described hereinabove, deprived Plaintiff of his freedom of speech and equal protection of the law in violation of 42 U.S.C. § 1983, the First and Fourteenth Amendments to the Constitution of the United States.

**WHEREFORE**, Plaintiff, Oscar Robinson, respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred and Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with attorneys' fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages, and any other damages as deemed appropriate by the Court.

**COUNT IV**
**Violation of 42 U.S.C. § 1983**
**Fourth and Fourteenth Amendments - False Imprisonment/Arrest**
**Plaintiff v. Defendant Officers**

119.     Plaintiff incorporates by reference each allegation stated in the preceding paragraphs.

120.     The Fourteenth Amendment provide protections against deprivations of liberty without due process of law.

121.     Plaintiff avers that the conduct of the Defendant Officers violated his civil rights under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments of the United State Constitution by reason of being detained and arrested without probable cause.

**WHEREFORE**, Plaintiff, Oscar Robinson, respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred and Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with

17

attorneys' fees, costs, interest, expenses, delay damages, compensatory damages, punitive

damages, and any other damages as deemed appropriate by the Court.

**COUNT V**
**Violations of 42 U.S.C. § 12102, *et seq*, including 29 U.S.C. § 701**
**Americans with Disabilities Act and Rehabilitation Act**
**Plaintiff v. City of Philadelphia**

122.    Plaintiff incorporates by reference each allegation stated in the preceding

paragraphs.

123.    Title II of the ADA prohibits programs, activities, and services of public entities

from discriminating against any "qualified individual with a disability."

124.    Defendant City of Philadelphia was, at all times relevant to this action, and

currently is a "public entity" within the meaning of Title II of the ADA and RA.

125.    Defendant City of Philadelphia provides "services, programs, and activities"

including police services within the City of Pennsylvania.

126.    Defendant City of Philadelphia is an organization that receives federal financial

assistance, as such RA is applicable to the City of Philadelphia.

127.    Pursuant to his diagnosis of PTSD, Plaintiff was a qualified individual with a

disability under the ADA and RA.

128.    Defendants knew or reasonably should have known that Plaintiff would have

suffered from mental illness following the May 21, 2020 incident whereas Defendant Officers

witnessed and/or participated in holding Plaintiff at gun point without probable cause.

129.    Plaintiff was denied benefits and/or discriminated against by public entity

Defendant City of Philadelphia.

130.    Defendant Officers wrongfully seized and/or arrested Plaintiff. Defendants

misperceived Plaintiff's actions which were the effect of his mental illness.

131.    While attempting to seize and seizing Plaintiff, Defendants failed to reasonably accommodate Plaintiff's mental illness.

132.    Many less restrictive courses of action were available to Defendant Officers, by they knowingly ignored these options in violation of Federal and Pennsylvania law.

133.    Defendant Officers should have reasonably accommodated Plaintiff's disability by showing him the alleged warrant or having police officers uninvolved in the May 21, 2020 incident effectuate the warrant.

134.    Instead, Defendant Officers chose to use additional excessive force against Plaintiff.

135.    Upon information and belief, Defendant City of Philadelphia failed to have written policies and/or to provide training to their police officers regarding the ADA and RA.

136.    Defendant City of Philadelphia's failure to implement written policies and to provide training to the individual Defendant Officers caused Plaintiff's harm through the violation of his rights.

137.    As a result of the City of Philadelphia's violations of Plaintiff's rights under the ADA and RA, Defendant suffered substantial injuries and/or damages.

**WHEREFORE**, Plaintiff, Oscar Robinson, respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred and Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with attorneys' fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages, and any other damages as deemed appropriate by the Court.

**COUNT VI**
**42 U.S.C. § 1983**
**Municipal Liability**
**Plaintiff v. City of Philadelphia**

138.     Plaintiff incorporates by reference each allegation stated in the preceding paragraphs.

139.     Defendant City of Philadelphia acted with malice, willful disregard and/or reckless indifference to Plaintiff by permitting a custom, practice and/or procedure to exist in which the City of Philadelphia police officers acted to disregard Plaintiff's personal and Constitutional liberty interests rather than providing orderly and appropriate police interaction.

140.     Defendant City of Philadelphia either failed to develop policies and proper disciplinary actions or developed and maintained policies or customs exhibiting deliberate indifference to the Constitutional rights of citizens in Philadelphia, which caused the aforesaid violation of Plaintiff's Constitutional rights.

141.     As previously identified, at all times relevant to this matter, PPD lacked oversight for police violence, failed to appropriately discipline police officers associated with complaints, provided inadequate policies on use of force, and had a custom of engaging in racial profiling against African Americans, including Plaintiff.

142.     Furthermore, evidence establishes a history of numerous civilian complaints filed against the 24th/25th Philadelphia Police District for claims similar to those in nature in this matter.

143.     It was the policy and/or custom of Defendant City of Philadelphia to inadequately and improperly investigate citizen complaints of police misconduct, especially as it relates to Defendant Officers, and acts of misconduct were instead tolerated and/or justified by Defendant City of Philadelphia.

144.    It was the policy and/or custom of Defendant City of Philadelphia to inadequately screen during the hiring process and to inadequately train and supervise its police officers, especially as it relates to Defendant Officers, thereby failing to adequately discourage further Constitutional violations on the part of its police force in general and Defendant Officers in particular.

145.    Defendant City of Philadelphia did not require or demand appropriate in-service training or re-training of officers who were known to have engaged in police misconduct or who were known to encourage or tolerate the same, especially Defendant Officers.

146.    Defendant City of Philadelphia also did not adopt needed policies, which should have been intended and calculated to avoid the Constitutional violations referred to herein.

147.    It was the policy and/or custom of Defendant City of Philadelphia to allow and even promote unlawful activities carried out by Defendant Officers including, but not limited to, excessive force and other Constitutional violations described herein.

148.    As a result of the above described policies and customs and failure to adopt necessary and appropriate policies, police offices of the City of Philadelphia, including Defendant Officers, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be investigated or sanctioned, but would be tolerated and even encouraged.

**WHEREFORE**, Plaintiff, Oscar Robinson, respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred and Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with

attorneys' fees, costs, interest, expenses, delay damages, compensatory damages, punitive

damages, and any other damages as deemed appropriate by the Court.

**Count VII**
**42 U.S.C. § 1983**
**Supervisory Liability**
**Plaintiff v. Lieutenant Peszko and John Doe Police Chief**

149.    Plaintiff incorporates by reference each allegation stated in the preceding

paragraphs.

150.    Defendants Lieutenant Peszko and John Doe Police Chief acted in their

supervisory capacity under the circumstances, and at a time, when one or more Defendant

Officers violated the Plaintiff's rights as set forth herein.

151.    At all times materials to the claims made herein, Lieutenant Peszko and John Doe

Police Chief occupied policymaking and supervisory positions relative to the PPD and

subordinate members of said department, including Defendant Officers.

152.    Lieutenant Peszko and John Doe Police Chief both had decision making authority

with regarding to the operational conduct of the Defendant Officers. Each possesses the authority

to measure the conduct and decisions of police subordinates, including Defendant Officers.  Each

has disciplinary authority over police subordinates, including Defendant Officers.  Each played a

role in fashioning and implementing Department policies, practices, procedures and customs and

often did so in consultation with each other.  Each is a person whose actions and conduct may be

fairly said to represent official municipal policy and/or custom.

153.    Lieutenant Peszko and John Doe Police Chief deliberately ignore the pattern and

history of Constitutional abuses perpetrated by Defendant Officers, deliberately ignored citizen

complaints regarding Defendant Officers' Unconstitutional conduct, deliberately to refused to

discipline, counsel or train/re-train Defendant Officers when it was clear that discipline, counsel or training/re-training was clearly necessary.

154.    The lacking and/or unenforced practices, policies and procedures which Lieutenant Peszko and John Doe Police Chief were required, at a minimum, to promulgate, implement, monitor, enforce and, if necessary modify, include, inter alia, a heightened supervisory sensitivity and vigilance for uncovering and eradicating Constitutional rights violations, procedures whereby citizens who had suffered Constitutional rights violations are encouraged to access a simple, non-retaliatory and responsive procedure to register their complaints and receive prompt objective responses, procedures cataloging complaints and their outcomes, creation of  and real enforcement of appropriate disciplinary procedures when complaints of Constitutional rights violations were founded and adequate training and re-training of officers, including Defendant Officers, when needed.

155.    The actions and/or inactions of Lieutenant Peszko and John Doe Police Chief, as more fully described hereinabove, directly involved in this matter helped create the damages suffered by Plaintiff stated herein.

**WHEREFORE**, Plaintiff, Oscar Robinson, respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred and Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with attorneys' fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages, and any other damages as deemed appropriate by the Court.

**COUNT VIII**
**Assault and Battery**
**Plaintiff v. Defendant Officers**

156.     Plaintiff incorporates by reference each allegation stated in the preceding paragraphs.

157.     Defendant Officers assaulted and battered Plaintiff as stated hereinbefore.

158.     Defendant Officers intended to cause Plaintiff severe fear of imminent bodily harm or death and succeeded in doing so by causing the Plaintiff to fear for his life and his personal safety.

159.     As a result of Defendant Officers' assault and battery, Plaintiff suffered the damages stated herein.

**WHEREFORE**, Plaintiff, Oscar Robinson, respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred and Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with attorneys' fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages, and any other damages as deemed appropriate by the Court.

**COUNT IX**
**Intentional Infliction of Emotional Distress**
**Plaintiff v. Defendant Officers**

160.     Plaintiff incorporates by reference each allegation stated in the preceding paragraphs.

161.     Defendant Officers acted with extreme and outrageous conduct against Plaintiff to intentionally or recklessly cause him severe emotional distress.

162.     As a result of the actions taken by Defendant Officers, Plaintiff suffered from severe emotional distress, as identified *supra*.

24

163.    Defendant Officers acted intending to cause Plaintiff distress or with knowledge that such distress was substantially certain to occur.

164.    As a result of Defendant Officers' actions, Plaintiff suffered the damages stated herein.

**WHEREFORE**, Plaintiff, Oscar Robinson, respectfully requests that this Honorable Court award judgment in Plaintiff's favor and against all Defendants, jointly and severally, in an amount in excess of the One Hundred and Fifty Thousand Dollars ($150,000.00) limit for arbitration in the Federal District Court for the Eastern District of Pennsylvania, together with attorneys' fees, costs, interest, expenses, delay damages, compensatory damages, punitive damages, and any other damages as deemed appropriate by the Court.

Respectfully Submitted,

**FALKENBACH LAW, LLC**

Date: _____

_/s/ Danielle S. Burke_
Amber L. Falkenbach, Esq.
Attorney ID No. 306610
Danielle S. Burke, Esq.
Attorney ID No. 316811
110 West Front Street
Media, PA 19063
T: (484) 442-8146
F: (484) 930-0148
amber@falkenbachlaw.com
danielle@falkenbachlaw.com
_Attorney for Plaintiff,_
_Oscar Robinson_