# EXHIBIT B

Dozens of Philadelphia police were reinstated after long careers led to fire the.... Prosecutors' records show it still keeps happening




# Fired, then rehired

Once-secret records show how the police arbitration system overturned the firings or discipline of more than 100 questionable Philadelphia cops.

by **William Bender** and **David Gambacorta**, Updated: September 12, 2019

After finishing his shift at 2 a.m., Officer Hashaam Choudri returned to his Northeast Philadelphia apartment, poured himself a glass of Grey Goose vodka, and waited for the prostitute he'd ordered to arrive.

"Getting a party started," Choudri invited a friend in a text.

The 33-year-old Philadelphia police officer would later claim that he wasn't looking for sex when he hired the woman from Backpage.com, a clearinghouse for prostitutes seized last year by the FBI. All he wanted, he insisted, was some female companionship.

But when two women arrived at his apartment around 4:35 a.m. on Oct. 29, 2016, Choudri paid the agreed-upon amount of $200, and one of them performed oral sex on him in his bedroom.

Choudri told them that he was a cop and showed off his gun and badge to impress them, according to a cell phone video taken by one of the women. Later in the footage, they can be seen in his walk-in closet, trying on his clothes.

The encounter led to an Internal Affairs investigation, which sustained charges against Choudri of soliciting a prostitute and association with a known criminal. A Police Board of Inquiry, consisting of a captain, lieutenant and rank-and-file officer, found him guilty of both counts, and unanimously agreed he should be fired. Then-Police Commissioner Richard Ross concurred.



JESSICA GRIFFIN / FILE PHOTOGRAPH
Former Police Commissioner Richard Ross was often exasperated by arbitrators who questioned his decision to fire officers accused of committing crimes.

Choudri's union, the Fraternal Order of Police Lodge No. 5, contested his firing by filing a grievance that rested on a novel defense: Choudri didn't understand that the oral sex he received for $200 was an actual transaction — because he lacked certain social skills, and was raised Muslim.

Under the labor contract between the city and the police union, the two parties settle such disputes with binding arbitration. James C. Peck Jr., the arbitrator presiding over the case, said in a March 2018 ruling that he did not believe Choudri "had some sort of diminished capacity which prevented him from understanding the difference between companionship and sex for hire," and rejected the FOP's argument.

However, Peck noted, he found the officer to be an "impressive young man who is quite articulate," and brought up a mitigating circumstance: Choudri's transgressions had been kept secret.

## RELATED STORIES

- **Could this state commission help weed out bad cops?**

- **Inside the once-secret misconduct files of 27 Philadelphia police officers**

/

"[T]here was no evidence that Officer Choudri's conduct was a source of tension or concern to other employees to the point that they refused to work with him," Peck wrote. "With respect to the consideration of harm to the Philadelphia Police Department, the events in question appear to have not been reported in any media outlet or social media outlet."

Finding Choudri an "otherwise acceptable employee," Peck ordered the officer returned to the force. He is now patrolling the 26th District, headquartered in Fishtown. Choudri didn't reply to requests for comment.

Choudri's case is among 170 previously confidential police arbitration opinions and settlements that The Inquirer obtained through a Right-to-Know request. Such unredacted records, which rarely see the light of day, reveal the behind-the-scenes machinations that enable officers to regain their jobs and ranks after they've been fired or demoted.

> "In our profession, the few taint the many. And that's the problem."
>
> **Former Police Commissioner Charles H. Ramsey**

An analysis of the cases, which date from 2011 to 2019, shows that the FOP has successfully fought to have police discipline overturned or reduced about 70 percent of the time.

The cost to taxpayers adds up: Among the 170 cases, the city has paid 26 officers at least $1.2 million in back pay and other payments. (The police department said it was unable to locate records of all payments to officers involved in arbitration since 2011). In addition, the city has paid nearly $4 million to settle federal lawsuits involving 15 of the officers.



**CHARLES FOX / FILE PHOTOGRAPH**
Former Police Commissioner Charles H. Ramsey believes arbitrators don't consider the impact their rulings have on the police department and the city when they reinstate cops who were dismissed for misconduct. "The reputation of the department gets harmed."

To the FOP, the arbitration system is a useful defense against bosses who haphazardly fire cops when they're accused of misconduct. To police officials, the fact that arbitrators have the final call on discipline is a maddening obstacle to cleaning up the department.

Dozens of Philadelphia police were reinstated after top brass tried to fire them. Once-secret records show how it keeps happening

Case 2:20-cv-04237-JFP DDooummeent 242-2 Filed 08/26/20 Page 5 of 235

"Philly is not a bad police department at all. It's good. But it will never realize its full potential as long as you have a system in place like this," said former Police Commissioner Charles H. Ramsey. "Any organization is only as good as the people in it. The majority of people are good people. But in our profession, the few taint the many. And that's the problem."

Interviews with current and former police leaders, officers, city officials, arbitrators and union leaders reveal there is plenty of blame to go around whenever a new, incendiary scandal makes it seem like corruption is woven into the police department's DNA.

**READ PROFILES OF PROBLEM COPS**



### Inside the once-secret misconduct files of 27 Philadelphia police officers

These police arbitration files detail evidence commissioners used to fire problem officers and the often-successful efforts by the police union to get punishment overturned.

## 'It's a crime!'

Call it whatever you'd like — the Blue Wall of Silence, the Thin Blue Line — but law enforcement agencies have long been accused of looking the other way when one of their own commits a crime. Yet the arbitration records show that the Philadelphia Police Department's Internal Affairs Division is capable, at times, of building thorough cases against officers who've done things that would leave an average citizen in handcuffs.

Even those efforts, though, can end up being inadequate in an arbitrator's eyes.

While most of the city was still asleep on an early March morning in 2016, a 24-year-old woman called 911 and reported that her ex-boyfriend, a young off-duty cop named Alex McAdams, had pounded on the door of her Northeast Philly apartment and then shattered her bedroom window.

Four patrol officers and an Internal Affairs supervisor quickly arrived and found blood spattered everywhere: on the sidewalk outside the woman's bedroom, streaked across her carpet, smudged on door handles and light switches. A white-gold necklace and a police badge charm were missing from her jewelry box, which was marked by bloody fingerprints. McAdams was nowhere in sight.

McAdams would later claim that he'd visited the woman's apartment at 2:30 a.m. out of concern, because she'd complained earlier of not feeling well. As for the broken window? It was "precariously glazed," McAdams told an arbitrator, and simply broke when he knocked.

But he painted a different picture in a Facebook post that morning: "Glad I stuck with my gut feeling. Caught my girlfriend cheating. Both ran like cowards. Glad I got my badge neckless [sic] back. No dirty slut ho … is wearing my badge on their chest. I knew it!!!"

Internal Affairs investigators copied the post, obtained a six-page statement from McAdams' ex-girlfriend, interviewed her neighbor, and matched the blood in her apartment to crimson stains that they found in McAdams' Dodge Charger. The missing necklace was located in the trunk. The District Attorney's Office charged him with burglary, criminal trespass, theft, and criminal mischief, and Ross fired him.

**SOLUTIONS**



### Could this state commission help weed out bad cops?

The state Municipal Police Officers' Education and Training Commission can revoke the licenses of officers convicted of certain crimes or deemed unfit for duty, but rarely does.

But the criminal charges were soon dismissed on a technicality: McAdams' ex-girlfriend didn't appear to testify. The couple later got engaged.

Case 2:20-cv-03583-JFP Document 12-2   Filed 08/26/22   Page 6 of 25

McAdams' fate ended up in the hands of Peck, the 70-year-old arbitrator, who is based in Media. In a January 2019 ruling, Peck wrote that although a "police officer needs to behave better than this," he believed that dismissal was too extreme, and ordered McAdams to be reinstated, as long as he completed anger management classes. Peck did not respond to requests for comment.

All of the records pertaining to McAdams' criminal case have since been expunged or sealed, leaving no public trace in the criminal court system that he had ever been charged.

During a July interview, Ross couldn't hide his frustration as he recounted, in general, how arbitrators questioned him about each decision to fire an officer for misconduct.

"They're asking me, 'How does this correlate to being a police officer?'" Ross said. "It's a crime! What are you talking about?"

> "They're asking me, 'How does this correlate to being a police officer?' It's a crime! What are you talking about?"
>
> **Former police commissioner Richard Ross**

(A month after the interview, Ross abruptly resigned, bringing his 30-year career to a stunning end. A female officer had accused him in a lawsuit of retaliating against her because she'd ended an affair with him.)

Cases like McAdams' can convey a muddled message to younger cops who are trying to understand how the police force functions. They're expected to embody the department's core values — honor and integrity — at all times. But getting caught up in a criminal case, even one based on plenty of evidence, can end up being the equivalent of a paperwork speed bump.

"If they get their back pay, then they got a paid vacation. I don't know if that's a good teaching tool," said Kevin Gallagher, a former Law Department employee who specialized in labor relations.

Once back on the job, tainted cops can create problems for prosecutors when those same officers are required to testify in criminal cases. Officers' misconduct — which must be disclosed to the defense if it is relevant to the case — could undermine their testimony or police work in the minds of jurors and judges.

"We lose legitimate cases because we end up with officers who should no longer be on the force, or should have been reassigned, as key witnesses in important cases," said District Attorney Larry Krasner. "We end up having to turn over information on police officers who have very questionable records, which is then used to persuade a jury that they cannot be trusted."



ED HILLE / FILE PHOTOGRAPH
Anthony DiLacqua, now retired, oversaw Internal Affairs from 2008 to 2010.

Some of the records obtained by The Inquirer detail relatively minor matters — insubordination, lying about doctor's visits, violating the department's residency requirement. But others involve allegations that are more disturbing: sexual assault, brutal displays of domestic violence, stalking, lying under oath.

Anthony DiLacqua, a retired police chief inspector, oversaw Internal Affairs from 2008 to 2010. He and his investigators had no say in how discipline was meted out; their job was limited to determining whether an allegation could be sustained. Still, they were often dismayed when cops returned to the force after Internal Affairs had determined the officers had committed serious offenses.

"We all have a vested interest in trying to keep someone off the job who exhibits behavior that's intolerable," DiLacqua said.

/

Dozens of Philadelphia police were reinstated after top bosses tried to fire them. One report records show how it keeps happening

# The Philadelphia Police Misconduct Database

An Inquirer analysis of 170 arbitration outcomes of alleged Philadelphia police misconduct shows that the Fraternal Order of Police has successfully reversed or reduced department-imposed discipline **more than two-thirds of the time**. Records of these cases, which are typically confidential, were obtained by The Inquirer through a Right-to-Know request and date back to 2011.

Type in the box below to search for individuals. Click on a name for records of the case.

Search in table

| Name | Rank | Alleged misconduct | Outcome |
|------|------|--------------------|---------| 
| Abrams, Anthony | Officer | Sex: prostitution and unapproved outside employment | Grievance partially granted |
| Akil, Nashid | Sergeant | Failure to supervise: ignored directive to check PFA orders | Grievance granted |
| Alba, Danielle | Officer | n/a | Settled: suspension reduced |
| Amato, Kristine | Officer | Conduct unbecoming: lying about phony doctor's appointments | Grievance partially granted |
| Arch, Steven | Lieutenant | Failure to supervise | Settled: discipline reduced |
| Archie, Eyleen | Officer | Abuse of authority: unauthorized call for police backup | Grievance denied |
| Avery, Anthony | Officer | n/a | Settled: transferred |
| Ayres, Don | Sergeant | Failure to supervise | Grievance denied |
| Bartorilla, Joe | Inspector | Failure to supervise | Settled: suspension reduced to reprimand |
| Baynes, Keith | Officer | Excessive use of force on suspect in custody | Grievance granted |
| Beasley, Demetrius | Sergeant | Conduct unbecoming: stealing utility services | Grievance denied |
| Belciano, Jason | Officer | Drugs: steroids use | Grievance granted |
| Bell, Doris | Officer | Neglect of duty | Settled: suspension reduced |
| Bell, Meika | Officer | Conduct unbecoming | Settled: termination reduced to suspension |
| Billips, Roxanne | Officer | Conduct unbecoming: multiple offenses | Grievance denied |
| Binns, Robert | Officer | Conduct unbecoming: neglect of duty | Settled: suspension reduced |
| Black, Maurice | Sergeant | Residency clause violation | Grievance denied |
| Blackmon, Darien | Lieutenant | Conduct unbecoming | Settled: suspension reduced to reprimand |
| Boyer, Andre | Officer | Conduct unbecoming and disobedience | Grievance granted |
| Boyer, Andre | Officer | Conduct unbecoming and disobedience (lying, abuse of authority) and disobedience | Grievance denied |
| Branish, William | Officer | Drugs: mailing marijuana | Grievance denied |
| Brooks-Whitaker, Theresa | Officer | Insubordination | Grievance denied |
| Brown, Britton | Officer | Insubordination | Grievance granted |
| Burke, Sir James | Officer | Conduct unbecoming: lying about military leave | Grievance denied |
| Byrd, Aquil | Officer | Assault | Grievance granted |
| Cahill, Sean | Officer | False statement (see Officer Harvey case) | Settled: reinstated |
| Campbell, Martin | Officer | Conduct unbecoming | Settled: termination reduced to suspension |
| Carbonara, Joanne | Officer | Conduct unbecoming | Settled: reinstated |
| Carrion, William | Officer | Conduct unbecoming | Grievance denied |
| Cathey, Darryl | Officer | Conduct unbecoming | Settled: reinstated |
| Chance, Debra | Corporal | Failure to supervise and inappropriate communications | Settled: demotion overturned |
| Choudri, Hashaam | Officer | Sex: soliciting prostitution, associating with criminals | Grievance granted |
| Ciarlante, John | n/a | Conduct unbecoming (lying) and insubordination | Settled: suspension reduced, transferred |
| Coco-Feinstein, Jennifer | n/a | n/a | Settled: suspension reduced to reprimand |
| Coco, Nicholas | Officer | Conduct unbecoming and insubordination | Settled: suspension reduced |
| Colville, Nicholas | Officer | n/a | Settled: termination reduced to suspension |

Dozens of Philadelphia police were reinstated after being fired to the line of duty. Our report cards show how it keeps happening

| Cook, Tyrone | Sergeant | Conduct unbecoming: stealing overtime | Grievance denied |
| Corrento, Gerard | Officer | Conduct unbecoming: sick time abuse | Grievance denied |
| Costello, Leo | Sergeant | Conduct unbecoming | Settled: suspension reduced |
| Cujdik, Jeffrey | Officer | Conduct unbecoming (See: Tainted Justice) | Grievance granted: reinstated |
| Dandrige, Sean | Sergeant | Neglect of duty: failure to investigate | Grievance denied |
| Davis, Randy | Sergeant | Conduct unbecoming and neglect of duty | Settled: suspension reduced |
| Dawson, Bryon | Officer | Conduct unbecoming | Settled: suspension reduced |
| Delagol, Barry | Officer | Sex: on duty | Grievance denied |
| Demnisky, Jon | Detective | Conduct unbecoming: lying, harassing civilian | Grievance denied |
| Eckert, Daniel | Officer | Insubordination and neglect of duty | Grievance partially granted |
| Farrell, Mitchell/Hanvey, Kevin | Officers | Disobedience: improper discharge of firearm | Grievance denied |
| Ferriola, Anthony | Officer | Conduct unbecoming: use of racial slurs | Settled: reinstated |
| Figueroa, Veronica | Officer | Lying about sick days | Grievance granted |
| Fitzgerald, Sheldon | Officer | Assault | Settled: termination reduced to suspension |
| Forest, Tony | Officer | Conduct unbecoming: drag racing resulting in fatality | Grievance partially granted |
| Ginaldi, Anthony | Lieutenant | Insubordination and making false entry | Settled: suspension reduced |
| Gonzalez, Stacey | Officer | Unauthorized absence | Grievance denied |
| Gore, Deorah | Detective | Retail theft | Grievance granted |
| Graber, James | Officer | Abuse of authority | Settled: suspension reduced |
| Graber, James | Officer | Domestic violence: punching wife in bar | Settled: reinstated |
| Green, James | Sergeant | n/a | Settled: demotion overturned |
| Gress, Brian | Lieutenant | Conduct unbecoming and neglect of duty | Settled: suspension reduced |
| Griffin, Erica | Detective | Neglect of duty | Settled: reference to suspension removed from file |
| Griffin, Joseph | Officer | Domestic violence and threatening wife | Grievance denied |
| Gross, Tamika | Officer | Failure to break up fight involving daughter | Grievance denied |
| Halbherr, Nicholas | Officer | n/a | Settled: suspension reduced to reprimand |
| Hargraves, John | Officer | Domestic violence | Grievance denied |
| Harris, Constance | Officer | Abuse of authority | Settled: suspension reduced |
| Hartzell, Steven | Officer | Neglect of duty | Grievance partially granted |
| Harvey, Joseph | Officer | Sex: masturbating on woman on-duty | Grievance denied |
| Haviland, William | Officer | Drunk on duty | Grievance denied |
| Herder, Arthur | Officer | Death threats | Grievance denied |
| Hill, Howard | Officer | n/a | Settled: termination reduced to suspension |
| Hill, Matthew | Officer | Domestic violence | Grievance granted |
| Holmes, Carl | Inspector | n/a | Settled: demotion reduced to suspension |
| Huff, Robbi | Officer | Domestic violence | Grievance granted |
| Jackson, Jerome | Officer | Failure to supervise | Settled: suspension reduced |
| Jessie, Darnell | Officer | Conduct unbecoming and neglect of duty | Settled: suspension reduced |
| Johnson, Margaret | Officer | n/a | Settled: suspension reduced |
| Jones-Wiggins, Bernita | Corporal | Interfering with criminal investigations of sons | Grievance denied |
| Jones, Melville | Officer | Conduct unbecoming | Grievance partially granted |
| Jordan, Dwayne | Officer | Sexual harassment | Grievance denied |
| Josey, Jonathan | Lieutenant | Striking woman in face at parade | Grievance granted |
| Kinard, Dion | Officer | Insubordination | Settled: suspension reduced |
| Klayman, David | Officer | Domestic abuse | Grievance granted |

Dozens of Philadelphia police were reinstated after long-hidden arbitration. Once secret records show how it keeps happening

| | | | |
|---|---|---|---|
| LaSalle, Anthony | Lieutenant | Neglect of duty and failure to supervise | Settled: one charge removed, restitution required |
| Lauf, Thomas | Detective | Insubordination | Settled: suspension reduced, transferred |
| Lawyer, Ernest | Officer | Fighting: swinging shovel at women | Grievance partially granted |
| Lawyer, Ernest | Officer | Fighting: with another officer | Grievance partially granted |
| Lewis, Deric | Officer | Domestic incident | Settled: reinstated |
| Lewis, Deric | Officer | Domestic incident, scuffle with arresting officer | Grievance granted |
| Lewis, Kevin | Officer | Insubordination | Settled: suspension reduced |
| Lewis, Michael | Officer | n/a | Settled: suspension reduced |
| Liciardello, Thomas and others | Officers | Narcotics squad corruption | Settled: reinstated and paid $90,000 |
| Long, Michael | Officer | Prohibited outside employment | Settlement: suspension reduced |
| Lupo, Steven | Officer | Conduct unbecoming, making false entry | Grievance granted |
| Malaczewski, Mark | Officer | Domestic abuse | Grievance partially granted |
| Manley, Melissa | Officer | n/a | Settled: reinstated |
| Mann, Cyrus | Officer | Improper discharge of firearm | Grievance granted |
| Marion, Joseph | Officer | Conduct unbecoming: assault | Settled: termination reduced to suspension |
| Marsh, Allen | Officer | Drugs: marijuana consumption | Grievance granted |
| Massi, John | Sergeant | Insubordination | Settled: suspension reduced |
| McAdams, Alex | Officer | Domestic incident, burglary | Grievance granted |
| McCollum, Robert | Officer | Insubordination | Grievance granted |
| McCrea, Andrew | Officer | n/a | Grievance denied |
| McHenry-Walker, Donna | Corporal | n/a | Settled: suspension reduced |
| McKnight, Sean and Robinson, Kevin | Officers | Excessive use of force | Grievance granted |
| Medycki, Walter | Sergeant | Conduct unbecoming | Settled: suspension reduced |
| Miles, Jamie | Officer | Falsified documents | Grievance denied |
| Miles, Jamie | Officer | Stealing time, falsified documents | Grievance partially granted |
| Mills, B. | Sergeant | Assault: off duty | Grievance denied |
| Mills, Michael | Sergeant | Conduct unbecoming | Grievance partially granted |
| Moore, Jerry | Officer | Theft: retail | Grievance denied |
| Moore, Tayon | Officer | Leaving the scene of an accident, criminal mischief, theft | Settled: termination reduced to suspension |
| Mostiller, James | Officer | Profane or insulting language or behavior | Settled: violation changed |
| Muhammad, Talib | Officer | Domestic violence | Settled: termination reduced to suspension |
| Mulholland, John | Sergeant | Excessive use of force | Grievance denied |
| Murray, Joseph | Detective | False statement while testifying | Grievance granted |
| Newsome-Middleton, Gail | Corporal | Insubordination | Grievance granted |
| Newsome, Marques | Lieutenant | Domestic violence | Settled: reinstated |
| Norman, Kendall | Officer | Conduct unbecoming: false entry | Grievance denied |
| Nuble, Lawrence | Lieutenant | Failure to supervise, neglect of duty | Settled: suspension reduced |
| O'Brien, Steve | Lieutenant | n/a | Setted: reinstated, must submit to steroid testing |
| O'Donnell, Adam | Detective | Assault of detainee | Grievance granted |
| Ortiz, Victor | Officer | Domestic incident: GPS stalking, lying | Grievance denied |
| Ortiz, Victor | Officer | Drugs: prescription pill abuse and overdose | Grievance granted |
| Paige, Michael | Officer | Sex: on duty. Filed grievance seeking promotion | Not arbitrated |
| Pasquarello, John | Officer | n/a | Settled: suspension reduced |
| Passalacqua, Gerald | Officer | Conduct unbecoming (lying) and disobedience | Grievance denied |

Dozens of Philadelphia police were reinstated after top brass tried to fire them. Once-secret records show how it keeps happening

| Name | Rank | Charge | Outcome |
|---|---|---|---|
| Phipps, Albert | Officer | Sexual assault | Grievance denied |
| Pleasant, Aisha | Officer | Assault of officer | Grievance denied |
| Porretta, Joseph | Officer | n/a | Settled: restitution order withdrawn |
| Powell, Aletta | Officer | Insubordination | Grievance denied |
| Pressley, Sheila | Sergeant | Abuse of authority | Settled: suspension reduced to reprimand |
| Quaintance, David | Officer | n/a | Settled: reinstated |
| Randall, Stanley | Officer | Conduct unbecoming | Settled: suspension reduced |
| Rivera, Jacqueline | Corporal | n/a | Settled: transfer rescinded |
| Rossiter, Kenneth | Detective | Stealing time, including court OT while at home. | Grievance granted: reinstated |
| Ruff, Brandon | Sergeant | Bringing bag of guns to police station, lying | Grievance denied |
| Ryan, Joseph | Officer | n/a | Settled: suspension reduced to reprimand |
| Satterfield, Holley | Officer | Conduct unbecoming and insubordination | Grievance denied |
| Sawicki, Edward | Officer | Threats, using racial epithets | Grievance granted: reinstated |
| Schneider, Nicholas | Sergeant | Conduct unbecoming (false entry) and neglect of duty (absence without leave) | Settled: suspension reduced |
| Schweizer, Scott | Officer | Racist sticker in locker | Settled: suspension reduced, received $10,000 |
| Sees, Joseph | Officer | Domestic violence | Settled: termination changed to retirement with pension |
| Sherwood, Donna | Officer | Insubordination | Settled: suspension reduced |
| Smith, Gerald | Officer | Domestic violence | Grievance denied |
| Smith, Gerald | Officer | Domestic violence | Grievance granted: reinstated |
| Storm, James | Officer | Drunken driving | Settled: termination changed to resignation with pension |
| Sulpizio, Joseph | Officer | Theft: multiple allegations on-duty | Settled: reinstated |
| Summers, Rodney | Corporal | Conduct unbecoming | Grievance denied |
| Swan, Donald | Officer | Racial epithets | Settled: reinstated |
| Szustowicz, Denise | Detective | n/a | Settled: suspension reduced |
| Thomas, Cathy | Officer | n/a | Settled: reinstated |
| Thomas, Elaine | Officer | Tax fraud | Grievance denied |
| Thomas, Jerry | Officer | Neglect of duty | Settled: suspension reduced |
| Thompson, Ronald | Officer | Sex: soliciting prostitution | Settled: reinstated |
| Tilghman, Lawrence | Officer | n/a | Settled: reinstated and paid $150,000 |
| Timms, James | Officer | Domestic violence and lying | Grievance granted, ordered reinstated but failed psych exam |
| Torres, Michael | Officer | Residency clause violation | Grievance granted: reinstated |
| Truitt, Stacey | Officer | Domestic: striking child with belt | Grievance denied |
| Turk, Tracey | Officer | Asleep with gun on lap, ignoring orders | Grievance partially granted |
| Wagner, Linda | Officer | Improper call for officer assist | Grievance denied |
| Walsh, Thomas | Sergeant | Theft of time | Grievance partially granted: transfer overturned |
| Weiss, James | Detective | Domestic: stalking and lying under oath | Grievance denied |
| Whack, Dominick | Officer | False entry | Grievance denied |
| White, Quinten | Sergeant | Disobedience | Settled: suspension reduced |
| Wilson, Takeya | Officer | Drunk on duty repeatedly | Grievance denied |
| Winckler, Tyrone | Officer | Conduct unbecoming and insubordination | Settled: termination reduced to suspension |
| Winckler, Tyrone | Officer | Wrongful discharge of weapon | Grievance granted: reinstated |
| Young-Bachmeyer, Donna | Sergeant | Theft of time | Grievance partially granted: suspension upheld, restitution overturned |

- Show less

10/26/2020 Dozens of Philadelphia police were reinstated after top brass tried to fire them. Once-secret records show how it keeps happening

Case 2:22-cv-01483-JP Document 12-2 Filed 08/26/22 Page 12 of 25

Case 2:22-cv-01985-GJP Document 24-2 Filed 08/26/22 Page 13 of 25

## A dart and a wall of balloons

The FOP profiles easily as the villain in stories about arbitration, given its leaders' usually unshakable defense of cops who come under scrutiny. But on a humid summer afternoon at the union's sprawling headquarters in the Far Northeast, FOP president John McNesby argued that he gets too much blame — or credit — for the union's success in arbitration hearings.

For years, he said, police commissioners have opted to hastily get rid of cops whose alleged misbehavior attracted media attention. McNesby ran through examples, from the 13 officers fired in July for racist Facebook posts, to a squad of six narcotics cops dismissed in 2014 after they were indicted on federal corruption charges. (Ramsey had vowed to melt the narcotics officers' badges. Instead, they were acquitted, and got their jobs back.)

Commissioners "just fire with no just cause, zero investigation, and then point the finger at us," McNesby said, perched at the end of a long conference table, next to his vice president, Roosevelt Poplar, and Richie Costello, the FOP's political coordinator.



**CHARLES FOX / STAFF PHOTOGRAPHER**
FOP president John McNesby (center), and his vice president Roosevelt Poplar (left) and former president Richard Costello (right) insist the union has no choice but to fight for fired cops when police commissioners don't abide by disciplinary guidelines.

"It's a lynching," Costello said.

The three men insisted that the union is just playing by the rules of Act 111, a state law that requires disputes between government agencies and unions to be resolved through binding arbitration. In that scenario, the FOP's task is to simply prove that police bosses either fail to follow the terms of the disciplinary code that's laid out in the union's contract with the city, or rely on shoddy Internal Affairs investigations.

It's easy to poke holes in those investigations, McNesby said: "It's like, you know, you're going to throw a dart at a wall full of balloons. You're gonna hit one of them."

Costello, who ran the union from 1988 to 1990, and then again from 1994 to 2002, chimed in: "Everybody's entitled to due process. That's our main job. We may not even like the guy, but you have to fire him right. If you fire him right, we can't win."

McNesby said he and other union officials gather every Monday for about two hours to review disciplinary cases and discuss whether they should file a grievance on an officer's behalf, the first step on the road to arbitration.

The FOP often reaches a settlement agreement with the city before a case gets to an arbitrator's desk. The reasons can vary. A witness may refuse to testify or can't be reached, for instance, or city officials may want to avoid having an arbitrator issue a steep award. Since 2011, the police disciplinary cases that have been decided by an arbitrator, as opposed to a pre-hearing settlement, are roughly split between those denied and those fully or partially granted.

"We're not taking rapists back," said McNesby, who's been in charge of the union since 2007. "We're not taking people that are slapping their wives back."

In fact, several cops who were fired for domestic violence did get their jobs back through arbitration, with the union's support. In each case, the arbitrator was a man.

"What we're seeing with a lot of these domestics — not saying that some of them aren't really pathetic — but some of them are simple arguments between husband and wife," McNesby said. "There's accusations made, and the next day, when they both sober up, they're going, 'Oh boy, what did we do?' And it ends there."

When Bristol Township police were called to the home of Philadelphia police officer Mark Malaczewski for a report of a domestic incident in February 2014, his girlfriend was clutching her shoulder and holding a clump of her own hair. She told police that Malaczewski had punched her and pushed her down, knocking her head into a brick fireplace, according to the records.

## Officer James Timms

Terminated following a January 2013 incident of domestic violence. Ordered reinstated, but failed psychological exam needed to return to the force.

Police responded to Timms' house after a neighbor called police about a domestic dispute involving two married police officers and a gunshot. Timms' daughter told investigators that Timms had punched his wife in the face and slammed her head on the floor, busting her lip and breaking two upper front teeth. "I am going to kill you," he warned both women, according to the daughter. They fled and Timms allegedly fired a round from his wife's service pistol into the first-floor ceiling, then initially lied about firing the gun. He later said it was a failed suicide attempt.

EXPAND

Malaczewski pleaded guilty to harassment and disorderly conduct involving fighting, Bucks County court records show, and was fired from the police force. But two years later, arbitrator James Darby ruled that he should be reinstated.

And when Officer Joseph Griffin was fired in 2014 for allegedly punching and choking his wife and threatening to kill her if she left, the FOP fought for him to be rehired.

Case 2:22-cv-02383-JP   Document 42-2   Filed 03/26/23   Page 15 of 25

Griffin's wife said he had assaulted her, and the city presented an arbitrator with chilling text messages that he'd sent her: "I'm gonna beat the s— out of u tonight ... The other ones ain't s— compare (sic) to what you got coming tonight."

## Officer Aisha B. Pleasant

Fired in 2012 after being charged with aggravated assault, resisting arrest and obstruction of justice in Atlantic City. Arbitrator Timothy J. Brown upheld the firing.

One night seven years ago at Caesars' Pier, Pleasant — who was off duty — and her pals got into an argument with management and were escorted off the premises. "You returned and punched an on-duty officer, then left," Internal Affairs investigators wrote in a notice of dismissal. Atlantic City Police Officer James Herbert later recalled that Pleasant appeared intoxicated, and told him to "go f— yourself" when he walked Pleasant and her friends down a stairwell. She then grabbed onto a railing, refused to let go, and bit Herbert's hand.

Pleasant had to be carried 200 yards to a patrol car, then into a police station, where she refused to give her name.

**EXPAND**

According to the arbitration records, the FOP claimed that the text messages were "of no consequence here." Even so, arbitrator David J. Reilly upheld the firing.

Despite McNesby's insistence that the union won't represent rapists, it has filed grievances on behalf of cops who were accused of sexual assault.

In December 2011, a North Philly woman told Internal Affairs she'd had a horrific encounter with Officer Albert Phipps inside a holding cell in the 9th Police District's headquarters at 21st and Hamilton Streets.

The woman, who had been arrested for shoplifting, claimed that Phipps walked into the room, instructed her to pull her pants down, and began grinding against her. In the moments that followed, he allegedly sucked one of her breasts and fondled her vagina.

Internal Affairs determined that Phipps' DNA was on the woman's bra. Ramsey fired Phipps, later telling arbitrator Robert E. Light that the cop had a troublesome history. The FOP sought to have Phipps' reinstated, but Light rejected them. The woman sued Phipps and the city, and received a $110,000 settlement. (Phipps couldn't be reached for comment.)

Numerous commissioners, from outsiders like Ramsey and John Timoney, to homegrown ones like Sylvester Johnson and Ross, have complained of being stymied by the union when they attempted to make the police force more honest.

10/26/2020   Dozens of Philadelphia police were reinstated after top brass tried to fire them. Once-secret records show how it keeps happening

Case 2:20-cv-04362-EJP Document 24-2   Filed 08/26/22   Page 16 of 25



**JESSICA GRIFFIN / FILE PHOTOGRAPH**
Sylvester Johnson, who served as police commissioner from 2002 until 2008, tried in vain to get the FOP to help him draft a new disciplinary code.

Johnson was rebuffed by the union in 2005 when he sought their input in updating the department's disciplinary code, which dated to the late 1960s. Ramsey, fed up with a spate of scandals that greeted the start of his tenure in Philadelphia, unilaterally implemented a new code in 2010, nearly doubling the number of rules to 107. The union complained to the state Labor Relations Board, but ultimately accepted many of the new rules in its 2014 contract with the city.

It remains to be seen whether McNesby will clash with Christine Coulter, the interim police commissioner, or a replacement that Mayor Jim Kenney could pluck from another part of the country. But whoever runs the police department will have to contend with the arbitration process; according to the city, there are currently about 150 open cases pertaining to police discipline and contract-related disputes.

Case 2:20-cv-03858-GJP    Document 2-2    Filed 08/26/20    Page 17 of 25

# Ineptitude or an uneven playing field?

Union leaders and police officials aren't the only players in an arbitration hearing. Attorneys from the Office of the City Solicitor present the police department's evidence in what amounts to a mini-trial. And The Inquirer's analysis shows that the city has long been outmaneuvered by the FOP's lawyers.

"It's like the L.A. Lakers or the 76ers going up against a grade school team," McNesby said. "I mean, it's not that hard."

McNesby's playground jab was echoed by Leon King, who worked for more than a decade in the solicitor's office, and negotiated numerous arbitration settlements when he was assigned to the Labor and Employment Unit. He, too, didn't mince words.

"The unit that handles these cases, where I used to work, typically the attorneys are new, and don't stay long. They don't get any training in regard to the arbitration process, or what arbitrators look for," he said. "They wing it."

King, who went on to serve as the commissioner of the city's prison system, accused the solicitor's office and the Law Department of failing to develop a strategic response to the FOP's long-running success in arbitration hearings.



**DAVID MAIALETTI / STAFF PHOTOGRAPHER**
Deputy City Solicitor Cara Leheny, of the Law Department's labor and employment unit, said winning arbitration cases is a challenge when witnesses aren't available to testify. But she said her attorneys are capable of taking on the FOP's experienced arbitration lawyers.

Cara Leheny, a deputy solicitor in the Law Department's labor and employment unit, strongly disputed that: "Our unit attorneys are intelligent, hardworking, persistent, creative, and equal to our colleagues on the other side."

Leheny noted that in arbitration the city bears the burden of proof. Even if an Internal Affairs investigation finds strong evidence of police misconduct, much of that evidence then has to be reproduced at arbitration hearings months or even years later. Witnesses who spoke to Internal Affairs near the time of the alleged crime or misconduct may have moved out of state, or filed lawsuits against the city, making them reluctant to testify. Others don't want to take a day off work to sit through a cop's hearing.

"It's tough," Leheny said. "It's just very tough."

## Officer Anthony Abrams

Terminated in June 2017. Violations include: lying during an investigation, associating with people engaged in criminal activity, and unapproved outside employment. Reinstated in May 2018.

Internal Affairs began investigating Abrams in June 2015 after he shot at a man who he said had robbed his live-in girlfriend. He told police that he had driven her to Brewerytown, around 1:30 a.m., to buy a cell phone from a man who had advertised it on Craigslist. The preliminary investigation suggested instead that his girlfriend "had been scheduling an appointment to provide prostitution services," according to arbitration records.

Abrams' girlfriend later told an Internal Affairs Division lieutenant that Abrams' cell-phone story was a lie — that she was a prostitute and Abrams essentially was her pimp. For months, she said, he had been driving her to escort appointments. During sexual exchanges,

**EXPAND**

Wives who are victims of domestic abuse are particularly prone to recant, sometimes under pressure from their family, or because they may want the officer to keep his job.

"If a victim is financially dependent on the abuser, that's another reason why she might not follow through" by testifying in criminal court or at an arbitration hearing, said John Delaney, a former First Assistant District Attorney who has handled police misconduct cases.

In a recent interview, Kenney said negotiations have begun to renew the FOP's contract, which expires in June 2020. He said the city would again look for ways to keep bad cops off the force.

"It's frustrating when we got a person we know shouldn't be there and they're put back," Kenney said. "It's frustrating for me and frustrating for all of us."

But his administration won't have a free hand in setting the terms of a new contract. If the union opposes any disciplinary changes in its next contract, Kenney said: "We're at the mercy of the arbitrator."

Krasner insisted city officials need to find a way to address the issue.

"There is little doubt that there needs to be changes in the police contract," he said.

Case 2:22-cv-01893-JS Document 2-2 Filed 03/26/22 Page 19 of 25



**ELIZABETH ROBERTSON / FILE PHOTOGRAPH**
Christine Coulter, the interim police commissioner, or a replacement chosen by Mayor Jim Kenney, will have to navigate the arbitration process. The city has about 150 open arbitration cases pertaining to police discipline and contract-related disputes.

Some former city officials say the secrecy that surrounds arbitration is problematic, because arbitrators are rarely forced to account for rulings that seemingly reward bad cops, and those little-explained decisions can inflame tensions between the police department and communities that are already distrustful of law enforcement.

"The reputation of the department gets harmed. That's obviously true," Ramsey said. "But the bottom line is, it's the public that I think gets the raw end of the deal."

Speaking at an arbitrators' conference in Philadelphia in June, Ramsey urged the attendees to consider how their decisions can impact the city. "Is this a person who should be out there with a badge and a gun, serving the public?" he recalled telling them. " ... I don't see how you cannot take that into consideration."

Gallagher, who represented the city in police arbitration cases before leaving in the mid-1990s to run a bed and breakfast in California, agreed that the city has long been outgunned by the FOP's lawyers. But he also maintains a sour view of how arbitrators render their decisions.

10/26/2020    Dozens of Philadelphia police were reinstated after top brass tried to fire them. Once-secret records show how it keeps happening

Case 2:22-cv-02583-JS Document 24-2   Filed 03/26/25   Page 20 of 25



**HEATHER KHALIFA / STAFF PHOTOGRAPHER**
Stanley L. Aiges, a veteran arbitrator, said the FOP's continued success in getting police firings overturned is "more a reflection of the ineptitude and overzealousness of the police department."

"Arbitrators are strange," Gallagher said. "Those guys don't like to bite the hand that feeds them." And, Gallagher added, arbitrators have something in common with the cops that appear before them for hearings: They both want to keep working.

Unsurprisingly, the argument that arbitrators aren't neutral doesn't sit well with the arbitrators themselves.

"That's bull—, pure bull—. That's the sore loser's argument," said Stanley L. Aiges, who's worked as an arbitrator for more than 50 years. "The FOP's [success] is more a reflection of the ineptitude and overzealousness of the police department. They make a lot of stupid decisions."

Aiges presided over three of the 170 cases reviewed by reporters. He ruled in favor of an officer once. "Arbitrators depend on both sides to be selected," he said. "The only way to ensure that you have that acceptability factor is to call them as you see them."



**PHILADELPHIA POLICE DEPARTMENT**
Joseph Griffin, Deric Lewis and Alex McAdams were fired for domestic incidents. McAdams was reinstated, as was Lewis — twice. Griffin lost his case after an arbitrator read text messages the officer sent his wife such as: "I'm gonna beat the s— out of u tonight."

## A peek behind the curtain

Many of the cases that are outlined in the arbitration records reveal allegations and Internal Affairs investigations that had never otherwise been public.

In recent years, the city has only released heavily redacted versions of police arbitration cases that revealed the cases' outcomes, not the underlying facts or arbitrators' findings.

Some of the newly disclosed settlements, some only two pages, offer no explanation of why an officer was headed towards arbitration in the first place. The only hint the public might get is if the officer's conduct was described in lawsuits.

That proved to be the case with an officer named Anthony Avery, whose name appears on a 2012 settlement agreement that showed he would be transferred to the Center City Police District, without elaborating on where he'd previously been stationed, or why the transfer was necessary.

Avery, however, appears frequently in court records. Between 2008 and 2014, he was sued four times in federal court, two of them for police-involved shootings that left two men dead: Timothy Goode Jr., and Laurence Ward. All told, the city has spent more than $227,000 settling lawsuits against Avery.

He hasn't kept a low profile since being moved to a district that's a stone's throw from tourist attractions like the Liberty Bell and Independence Hall. City records show that five civilians have filed complaints against Avery since 2015. The police department is still investigating two complaints from last year, one for physical abuse, the other for verbal abuse.

10/26/2020  Dozens of Philadelphia police were reinstated after top brass tried to fire them. Once-secret records show how it keeps happening

Case 2:22-cv-01328-JFL Document 1-2   Filed 03/26/22   Page 22 of 25

## How Some Police Discipline Cases Were Decided

Here are selected categories of alleged police misconduct in the 170 cases reviewed by The Inquirer, and how they were decided through the arbitration process. In most cases, the officer's original discipline was overturned or reduced either through a pre-hearing settlement or by an arbitrator.

| | Settled before arbitration | Discipline reduced or overturned | Discipline upheld |
|---|---|---|---|
| Disobedience/insubordination | 9 | 4 | 6 |
| Domestic incidents or violence | 5 | 7 | 5 |
| Conduct unbecoming (unspecified offense) | 10 | 3 | 2 |
| Neglect of duty | 8 | 1 | 1 |
| Assault | 2 | 2 | 2 |
| Falsified entry/statement/documents | 1 | 2 | 3 |
| Failure to supervise | 4 | 1 | 1 |
| Sexual misconduct | 1 | 2 | 2 |
| Payroll abuse | | 3 | 2 |
| Abuse of authority | 3 | 1 | |
| Racial slurs | 3 | 1 | |
| Drugs | | 3 | 1 |
| Excessive force | | 3 | 1 |
| Lying | | 2 | 1 |
| Drunkenness | 1 | 2 | |
| Residency clause violation | 1 | 2 | |

Chart: JOHN DUCHNESKIE / Staff Artist • Source: Philadelphia Police Department

## Back to work

The frequent fliers are perhaps the most troubling examples of how the arbitration system can end up repeatedly rewarding cops who have shown they don't belong on the force.

Officer Tyrone Winckler was fired in December 2014 for conduct unbecoming and insubordination, but with the FOP's support, he won his job back through arbitration on Oct. 20, 2015. Three days after returning to work, Winckler was suspended with intent to dismiss for a previous allegation involving the improper discharge of his firearm while off duty. But in December 2016, an arbitrator returned Winckler to the force again.

Court records show that in 2014 the city paid $25,000 to settle a federal lawsuit filed by Olu Afuwape, then a Penn State University student, who said Winckler inappropriately Tasered him on his neck while Afuwape was trying to break up a fight in Center City. Afuwape was not charged with any wrongdoing in that incident.

"He keeps getting rehired. Does he have to take someone's life for them to understand he shouldn't be on the force?" Afuwape asked. "How the hell this man got his job back, only God knows."

Officer Deric Lewis managed to get arrested four times — in three jurisdictions — during 12 years with the department.

Lewis, now 38, was first fired by Ramsey in 2010 after he was charged with domestic assault in Philadelphia. But he was reinstated the following year through a settlement agreement between the city and the FOP.

Case 2:22-cv-04293-JP Document 14-2 Filed 03/26/22 Page 23 of 25

Ramsey, in his last official action as commissioner, fired Lewis' again after police said his wife called 911 from their Upper Darby home in 2015, and told an operator: "Please hurry. He has a gun and he's going to kill me." When police arrived, Lewis' wife was uncooperative, and Lewis refused to give them his name or identify himself as a police officer — a violation of a Philadelphia police directive. He tussled with one of the Upper Darby officers and later pleaded guilty to a charge of disorderly conduct/engaging in fighting.

James Peck — the same arbitrator who last year reinstated Hashaam Choudri, the officer who had hired a prostitute, and this year reinstated Alex McAdams, who broke into his girlfriend's apartment — heard Lewis' case.

In his ruling, Peck acknowledged Lewis' "stunning lack of common sense" and "remarkably bad judgment" during his altercation with Upper Darby police. But then Peck transitioned to a surprising conclusion.

"I am unconvinced that Lewis, an otherwise acceptable employee, is beyond redemption," he wrote, in ordering Lewis reinstated.

Lewis — whose life motto on Facebook is "I am not mean. I am blunt" — would soon prove Peck wrong.

In December 2017, Lewis was arrested for a fourth time, in Yeadon Borough. He pleaded guilty in March 2018 to disorderly conduct/engaging in fighting and was fired a third time. The FOP has refused to file a grievance on Lewis' behalf.

Reached by phone this month, Lewis said his most recent arrest was another domestic disturbance with his wife, who he said was intoxicated and angry at him. He said an FOP official told him the union wouldn't support him because it was the "same situation over and over" involving Lewis and his wife.

Lewis said he feels betrayed.

"I understand you get fed up with stuff like that, but each officer is supposed to have a grievance filed on their behalf," he said. "I've seen officers who beat up their significant others, with black eyes and they're hospitalized and all that, and they continued to work the whole time."

*Staff writers Dylan Purcell and Juliana Feliciano Reyes contributed to this article.*



**ELIZABETH ROBERTON / FILE PHOTOGRAPH**
The police union's contract expires next summer. As part of negotiations, Mayor Jim Kenney said the city will seek to keep bad cops off the force, but he realizes the FOP can oppose any suggested changes.

💬 View Comments

# Good Reads



**How the Divided States of Pennsylvania reflect America**



**Pennsylvania now lets everyone vote by mail. But poor people in Philadelphia remain forgotten.**



**Philadelphia Black Lives Matter activists say the historic summer of protests was only the beginning**

TWITTER    FACEBOOK    INSTAGRAM

NEWS & INFO

News / Sports / Entertainment / Business / Health / Food / Life / Opinion / Archives / Special Reports

ABOUT US

About The Philadelphia Inquirer / Advertise / Contact Us / Licensing & Permissions / Photo Reprints / Newspapers in Education / Jobs & Internships / Inquirer Events / Acel Moore Workshops / Newsroom Staff

MARKETPLACE

Inquirer Store / Find a Home / Job Listings / Special Sections / All Classifieds / Gift Subscriptions

MOBILE APPS

Inquirer News / Philly Sports Now



THE INQUIRER

Subscribe

THE DAILY NEWS

Subscribe

The Philadelphia Inquirer

© 2020 The Philadelphia Inquirer, LLC    Terms of Use   /   Privacy Policy